UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TAMARA KING,<br><br>Defendant. | Case No. CR23-159-RSM<br><br>ORDER RE: MOTIONS IN LIMINE |

## I.   INTRODUCTION

This matter comes before the Court on the Motions in Limine filed by the parties, Dkts. #111, #114, #115, and #116. The Court has determined it can rule on these Motions without oral argument or *Daubert* hearings. The Court has considered all briefing filed by the parties, including the surreply by the United States and Defendant's Motion to Strike containing a substantive response to that surreply. *See* Dkts. #129 and #130. For the reasons below, these Motions are GRANTED, DEFERRED, and DENIED as stated below.

## II.   AGREED MOTIONS IN LIMINE

Defendant states that the parties have agreed to the following:

> 1. Ms. King requests that all potential government witnesses be excluded from the courtroom during all portions of the trial until they are called to testify. Fed. R. Evid. 615. Ms. King further requests that the exclusion includes opening statements of both parties, and all portions of the trial even after completion of the witness' testimony unless both parties agree that the witness will not be recalled for any reason. Ms. King further moves the Court to order the government to instruct its witnesses not to discuss their testimony, or the testimony of other witnesses, before or after they have testified until the jury has returned a verdict. If the Court declares a mistrial, the witnesses should be instructed not to discuss their testimony or the case until it is resolved.

ORDER RE: MOTIONS IN LIMINE - 1

> 2. Defense investigator Chevy Echeverria is an integral member of the defense team, and Ms. King respectfully requests he be exempt from exclusion and allowed to sit at counsel's table.

Dkt. #115 at 3–4. The Court accepts these agreements and will enforce them at trial.

### III. PLAINTIFF'S MOTIONS IN LIMINE

1. The Government first moves to exclude the testimony of proposed defense expert Dr. Chitra Raghavan. Dkt. #111. Dr. Raghavan is a professor of psychology at the John Jay College of Criminal Justice in New York. According to Dr. Raghavan's report, her expertise focuses on "coercive control and sexual assault in domestic violence, sex trafficking and other interpersonal contexts, and how forms of prolonged psychological captive trauma can lead to disorders such as 'trauma bonding,'" otherwise known as Stockholm Syndrome. Dkt. #112 at 1 and at 2 n.2. She intends to offer the following opinions:

> It is my professional opinion to a reasonable degree of psychological certainty that the tactics of love bombing and coercive control marked by fraud and deception Ms. King described experiencing from Mr. Waln likely contributed significantly to Ms. King's financial actions outlined in the indictment. It is also my psychological opinion that certain actions by Mr. Waln early in the relationship likely contributed significantly to Ms. King's belief that his business dealings (and therefore hers) were legitimate. Finally, Ms. King's behaviors and actions—particularly her naïve trusting acceptance of Mr. Waln's alleged deceptions—were likely also influenced by a trauma bond she developed as a result of Mr. Waln's coercive control.

*Id.* The Government argues that this type of testimony is inadmissible under the Insanity Defense Reform Act ("IDRA"), 18 U.S.C. § 17(a). The IDRA "codified the insanity defense under federal law for the first time and placed significant restrictions on the use of mental defect evidence." *United States v. Twine*, 853 F.2d 676, 678 (9th

ORDER RE: MOTIONS IN LIMINE - 2

Cir. 1988). The IDRA states: "it is an affirmative defense to a prosecution under any Federal Statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of severe mental disease or defect, was unable to appreciate the nature and quality of the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense." 18 U.S.C. § 17(a). In passing the IDRA, Congress was motivated in part by concerns "about the danger that expert psychiatric testimony regarding inherently malleable psychological concepts can be used at trial to mislead or confuse the jury." *United States v. Cameron*, 907 F.2d 1051, 1062 (11th Cir. 1999). Under the IDRA, "it is clear that Congress meant to eliminate any form of legal excuse based on lack of volitional control." *Cameron*, 907 F.2d at 1061; *see also United States v. Hudak*, 2025 WL 2835756 at *3, -- F.4th -- (4th Cir. Oct. 7, 2025) ("the plain language of the statute bars a defendant who is not offering an insanity defense from offering evidence of his lack of volitional control as an alternative defense") (quoting *United States v. Worrell*, 313 F.3d 867 (4th Cir 2002)). Therefore, "psychiatric evidence of impaired volitional control . . . is inadmissible whether offered to support an insanity defense or for any other purpose." *Cameron*, 907 F.2d at 1061. Courts can exclude psychiatric testimony of purported psychological conditions that fall short of an insanity defense. *See, e.g., Worrell*, 313 F.3d at 872 (affirming exclusion of intermittent explosive and bipolar disorder evidence); *United States v. Erickson*, 2022 WL 72107, *3 (D. Or. 2022) (excluding neuropsychologist's testimony that defendant's brain injury rendered him susceptible to suggestion and compromised his decision-making capacity). However, the Ninth Circuit has determined that IDRA leaves room for a diminished capacity defense. *Twine*, 853 F.2d at 679 (citing *United States v. Frisbee*,

ORDER RE: MOTIONS IN LIMINE - 3

623 F. Supp. 1217 (N.D. Cal. 1985); *United States v. Gold*, 661 F. Supp. 1127 (D.D.C. 1987); *United States v. Pohlot*, 827 F.2d 889 (3d Cir. 1987)). Specifically, IDRA allows the introduction of expert testimony to negate specific intent. *Frisbee*, 623 F. Supp. at 1222. Here, the Government argues that Dr. Raghavan's proposed testimony is the kind of volitional control evidence the IDRA forbids because "the very core of Dr. Raghavan's opinion is that Ms. King lacked volitional control over her actions." Dkt. #111 at 6–7. In Response, Defendant argues that the Government misinterprets Dr. Raghavan's opinions:

> The government misstates Dr. Raghavan's conclusions to fit its claim that she intends to offer an opinion about whether Ms. King acted volitionally. Dkt. 111 at 7. Ms. King is not asserting a diminished-capacity defense. Properly understood, the diminished-capacity defense is an affirmative defense that excuses criminal conduct if the mental disease or defect meant the defendant lacked the capacity to form the mens rea. *Id*. at 903. Dr. Raghavan will not testify that Ms. King lacked the capacity to form the mens rea for the crime. Indeed, Dr. Raghavan does not opine about whether Ms. King's actions were volitional at all.

Dkt. #128 at 4. Just a few sentences later, Defendant argues that "Dr. Raghavan's testimony is offered to explain how Ms. King's love for Mr. Waln could make her blind—but not willfully blind—to his deceit." *Id*. at 5. Defendant relies heavily on cases where expert testimony such as this was permitted to support a duress defense with threats of domestic violence. *See id*. (citing, *inter alia*, *United States v. Lopez*, 913 F.3d 807, 821 (9th Cir. 2019)). The problem for Defendant is that she has not brought a duress affirmative defense and has failed to point to any evidence to support such a defense. Furthermore, this is not a domestic violence or sex trafficking case, it is a fraud case. Dr. Raghavan's report defines "coercive control" as "an abuse dynamic that seeks to strip the victim of autonomy and agency…. The victims… lose their agency

ORDER RE: MOTIONS IN LIMINE - 4

and are forced into compliance.…" Dkt. #112 at 1 n.1. Later, it is defined as "attacking one's capacity to consent and reality testing." *Id*. at 7. To be stripped of autonomy; to lose agency; to have one's capacity to consent under attack: this strikes the Court as an expert testifying that the defendant lacked the *capacity* to commit the crime. This has the danger to mislead or confuse the jury and is impermissible under the IDRA. Dr. Raghavan's report clearly veers into capacity and does not merely show that Mr. Waln's actions negated Ms. King's intent to commit the alleged crimes. Furthermore, Dr. Raghavan intends to testify that Ms. King was "forced into compliance;" this is the very definition of duress. The Ninth Circuit has "long held that a defendant is not entitled to present a duress defense to the jury unless the defendant has a made a prima facie showing of duress in a pretrial offer of proof." *United States v. Vasquez-Landaver*, 527 F.3d 898, 802 (9th Cir. 2008). Defendant states that she "has not covertly asserted a duress defense." Dkt. #130 at 2. She has not made a prima facie showing, and is not explicitly asserting a duress defense, but she is calling an expert witness who would impermissibly apply the language of duress to the facts of this case. Finally, the Court agrees with the Government that much of this testimony should also be excluded under FRE 703 because the report relies almost entirely on Ms. King's out-of-court statements concerning her relationship with a former co-defendant regarding many of the actions directly at issue in this fraud case. Dr. Raghavan would not be permitted to introduce Ms. King's out-of-court statements about her relationship with Mr. Waln, and the actions of the two related to the fraud, without Ms. King testifying. Generally speaking, a defendant who wishes to put her statements before the jury must take the stand and be subject to cross-examination. Given all of the above, this Motion is GRANTED.

ORDER RE: MOTIONS IN LIMINE - 5

2. The Government next moves to exclude the testimony of proposed defense expert Kenneth Hines, a former IRS special agent. The Government argues that his proposed testimony that "Ms. King lacked the willful intent required to commit a criminal tax offense" violates FRE 704(b). In criminal cases, an expert witness may not "state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." FRE 704(b). Defendant responds that Mr. Hines "has revised his opinion" and will not testify as to "Ms. King's state of mind," rendering this issue moot. The Court finds that this exact phrasing will not be permitted but that the witness can otherwise testify. Mr. Hines has a sufficient professional background to comment on the conduct of the CPAs in this case. Any similar issues can be dealt with on cross examination. DENIED.

3. The Government, in a separate filing, moves to exclude any witnesses from offering evidence that Ms. King was sexually assaulted or sexually coerced by Mr. Waln under Rules 402 and 403. Dkt. #116. Ms. King responds that her "history of sexual abuse and coercion at the hands of Mr. Waln is relevant to whether she possessed the mens rea to commit wire fraud and to join a conspiracy with Mr. Waln to commit wire fraud." The Court questions the probative value of this testimony, considering the timing of the alleged sexual assault and the multi-year fraud alleged in this case, but ultimately finds that there is a way for such testimony to be admissible. The Court is not currently convinced that it is more prejudicial to the Government than it is probative to this case, and the jury can be properly instructed on how to use this evidence. Given the open question of whether this testimony will be presented, and the gravity of the accusations

ORDER RE: MOTIONS IN LIMINE - 6

and potential inflammatory nature of the accusations, the Court will defer ruling on this issue until such testimony is presented at trial. This Motion is therefore DEFERRED.

4. Finally, the Government moves to exclude evidence of Ms. King's current modest financial status and lifestyle. Dkt. #116 at 6. The Government argues it is permitted to present evidence of King's lifestyle and expenditures during the relevant time period to show her intent, motive, and willfulness, citing *United States v. Reyes*, 660 F.3d 454, 464 (9th Cir. 2011). *Id.* The Government then says that just because "King may have reformed her values and adjusted her standing of living after filing for bankruptcy and being indicted by a federal grand jury has no material bearing on King's state of mind or actions during the commission of the charged crimes." *Id.* The Court agrees. This type of evidence is properly excluded under FRE 402 and 403. GRANTED.

### IV.    DEFENDANT'S MOTIONS IN LIMINE

1. Defendant King first moves to limit the testimony of the Government's expert witness Mark Van House to exclude hearsay and to preclude opinions of Ms. King's intent, whether the transactions at issue were bona fide loans, legal opinions about the scope of the operating agreements, and fiduciary duties. Dkt. #115. In response, the Government indicates that Agent Van House will not offer testimony on intent to commit the charged crimes but rather testimony as to predicate questions (like intent to repay loans) and will rely on evidence introduced by other witnesses, not hearsay. The Government cites several cases indicating that this type of tax expert opinion is generally permitted. *See* Dkt. #124 at 4. An expert may rely on inadmissible evidence but may only disclose that evidence to the jury if the "probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. The Court finds that

Agent Van House's proposed testimony, as limited by the Government's response, does not run afoul of FRE 704(b) or FRE 703 and is relevant. Defendant is free to object to improper testimony at trial. This Motion is DENIED.

2. Defendant King next moves to preclude or limit Special Agent Andrew Cropcho's testimony about commercial lending practices and equity investments based on a lack of qualifications. Federal Rule of Evidence 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> the testimony is based on sufficient facts or data;
> the testimony is the product of reliable principles and methods; and
> the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702, the trial court acts as a gatekeeper and ensures that the proffered scientific testimony meets certain standards of both relevance and reliability before it is admitted. *Daubert v. Merrell Dow Pharm., Inc.* ("*Daubert I*"), 509 U.S. 579, 590, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). The party proffering expert testimony has the burden of showing the admissibility of the testimony by a preponderance of the evidence. *Id*. at 592 n.10. "[J]udges are entitled to broad discretion when discharging their gatekeeping function" related to the admission of expert testimony. *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150-53, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)). The Court considers four factors to determine if expert testimony will assist the trier of fact: "(i) whether the expert is qualified; (ii) whether the subject matter of the testimony is proper for the

ORDER RE: MOTIONS IN LIMINE - 8

jury's consideration; (iii) whether the testimony conforms to a generally accepted explanatory theory; and (iv) whether the probative value of the testimony outweighs its prejudicial effect." *Scott v. Ross*, 140 F.3d 1275, 1285-86 (9th Cir. 1998). As an initial matter, this Court must determine whether a witness is qualified as an expert by "knowledge, skill, experience, training or education." Fed. R. Evid. 702. Because the Rule "contemplates a broad conception of expert qualifications," only a "minimal foundation of knowledge, skill, and experience" is required. *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015-16 (9th Cir. 2004) (emphasis in original) (quoting *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994)). A "lack of particularized expertise goes to the weight of [the] testimony, not its admissibility." *United States v. Garcia*, 7 F.3d 885, 890 (9th Cir. 1993) (citing *United States v. Little*, 753 F.2d 1420, 1445 (9th Cir. 1984)); *Daubert v. Merrell Dow Pharm., Inc.* ("*Daubert II*"), 43 F.3d 1311, 1315 (9th Cir. 1995). Ms. King states that "Special Agent Cropcho has a Juris Doctor and a master's in business administration, is a Certified Public Accountant, and had experience working on tax issues before joining the FBI," but that "[w]hile his education and work experience may qualify him to talk about accounting and tax principles, his relevant experience in commercial lending and equity investments is not apparent from the disclosure or his Curriculum Vitae." Dkt. #115 at 11. The Court has Agent Cropcho's Curriculum Vitae, Dkt #105-1 at 4. The Court finds that Ms. King's concerns go to the weight of the testimony, not its admissibility. The Court is convinced that this witness has at least some experience with commercial lending and equity investments and is otherwise qualified to opine on the topics at issue. Defendant is free to attack his opinions on cross examination. This Motion is DENIED.

ORDER RE: MOTIONS IN LIMINE - 9

3. Defendant's third Motion deals with evidence offered through Rule 404(b), so-called "other acts" evidence. The Government has identified five witnesses that it believes are admissible under this rule with evidence of intent, knowledge, absence of mistake, and lack of accident. Defendant argues that the proposed evidence does not fit within the parameters of Rule 404, is not probative of any relevant issue, and is unduly prejudicial under Rule 403. The Government explains:

> At varying points throughout the course of King and Waln's relationship, [Defendant's sister] Paolozzi; King's ex-husband, John King; King's personal assistant, Betzy Jones; and the couple's tax preparer, Howard Choder, personally observed interactions between King and Waln in various settings. Paolozzi, John King, and Jones also witnessed varying aspects of King's displays of extravagant wealth and her personal desire for a luxurious lifestyle. Paolozzi, John King, Jones, and Choder also observed King's business acumen and intelligence before and during the charged offenses.

Dkt. #124 at 10. The Government also mentions the potential testimony of Brian Wright, a new boyfriend of Defendant in 2018 who also got into business dealings. *Id*. at 10. The Government discusses the need for this testimony to rebut the potential testimony of expert Dr. Raghavan. The Court has already excluded expert Raghavan, reducing the probative value of this type of evidence. However, the Government also argues that the testimony of these witnesses is admissible pursuant to FRE 404(b) as evidence of intent, knowledge, absence of mistake, and lack of accident. More specifically, the Government states that "[t]o prove her participation in the scheme, as well as her motive to steal investor money, the government needs to show that King: (1) was a true partner and a decisionmaker in her relationship and business dealings with Waln; (2) possessed business acumen; and (3) coveted and enjoyed a lavish lifestyle." Dkt. #124 at 12. The Court finds that the proposed evidence does not run afoul of FRE

ORDER RE: MOTIONS IN LIMINE - 10

404(b). *See United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012) ("Evidence should not be considered 'other crimes' or 'other act' evidence… if 'the evidence concerning the "other" act and the evidence concerning the crime charged are inextricably intertwined.'") These witnesses all have the potential to testify about Ms. King's character with unrelated anecdotes but *also* to testify about their direct observations of her behavior during the alleged crimes or her comments related to the alleged crimes. To the extent that testimony from these witnesses veers into other acts not intertwined with the alleged crimes, Defendant is free to object. To the extent that any question solicits evidence that is more prejudicial than probative, Defendant is free to object. This Motion is DENIED.

4. Defendant's fourth Motion affirmatively asks to allow the remote testimony of Dr. Raghavan. This Motion is DENIED consistent with the above.

## V.  CONCLUSION

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that the parties' Motions in Limine, Dkts. #111, #114, #115, and #116, are GRANTED, DEFERRED, and DENIED as stated above. The Court further ORDERS that the parties' related Motions for overlength briefing, Dkts. #123 and #127, are GRANTED for good cause. The Court DENIES Defendant's Motion to Strike, Dkt. #130.

DATED this 24th day of November, 2025.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER RE: MOTIONS IN LIMINE - 11